```
                IN THE UNITED STATES DISTRICT COURT
                  FOR THE SOUTHERN DISTRICT OF OHIO
                           EASTERN DIVISION
```

**Charles Hickey Jr., et al.,**       :
                                      :
                                      :     Case No: 2:08-cv-00824
      Plaintiffs,                     :
                                      :     Judge Graham
      v.                              :
                                      :     Magistrate Judge King
**Mary Susan Chadick, et al.,**       :
                                      :
      Defendants.                     :


## OPINION AND ORDER


Plaintiffs, Lasmer Industries, Inc. ("Lasmer"), Charles Hickey, Jr., Doris Evelyn Hickey, Larry Howard, William Hickey, Harry (H.M.) Cooper, and James Hickey (collectively, "plaintiffs") bring this action pursuant to the Administrative Procedures Act, 5 U.S.C. § 701, et seq. ("APA"), against Defendants Defense Logistics Agency ("DLA"), Lieutenant General Robert T. Dail, in his official capacity as Director of DLA, and M. Susan Chadick, in her official capacity as Special Assistant for Contracting Integrity, DLA (collectively, "Defendants"), to challenge two expired debarments issued by the DLA.

### I.   BACKGROUND

Debarment is an action taken against a contractor to exclude it from government contracting for a specified period. The regulations governing debarments are set forth in the Federal Acquisition Regulation ("FAR"). 48 C.F.R., Chapter 1, Part 9, Subpart 9.4. The FAR is the primary document establishing uniform

policies and procedures for acquisition by all federal agencies. 48 C.F.R. § 1.101.

Contractors debarred, suspended, or proposed for debarment are excluded from receiving government contracts. 48 C.F.R. § 9.405(a). These contractors are listed on the General Services Administration's Excluded Parties List System or "EPLS". See 48 C.F.R. §§ 9.405(b); 9.404(a)(1) and (d). If an agency decides to debar a government contractor, the debarment is effective throughout the federal government. 48 C.F.R. § 9.406-1(c).

On September 15, 2005, the DLA debarred plaintiffs from government contracting for a period of three years for unsatisfactory performance on one or more government contracts pursuant to 48 C.F.R. § 9.406-2(b)(1)(i)(B). On July 29, 2008, DLA issued a decision extending plaintiffs' debarment for an additional six month period, through July 31, 2008, pursuant to 48 C.F.R. § 9.406-2(c), based on plaintiffs' having continued to do business with the government during their three-year debarment which amounted to "seriously improper conduct [providing] a cause for debarment." Complaint, Exhibit 16, p. 7. Because plaintiffs' debarments are expired, they are no longer listed on the EPLS, but they are listed on the EPLS archive.

Plaintiffs bring this action under the APA to challenge the expired 2005 and 2008 debarments. Plaintiffs filed their complaint in this case on August 28, 2008, after they had been removed from the EPLS, seeking injunctive and declaratory relief.

Defendants filed a motion to dismiss or in the alterative, a motion for summary judgment. (Doc. 9). Plaintiffs responded to the motion to dismiss, but asked this court to stay its response

2

to the motion for summary judgment until after this court decided the motion to dismiss. (Doc. 13). This court agreed and stayed plaintiffs' response to the motion for summary judgment. (Order, Doc. 16). This opinion addresses only defendants' motion to dismiss for lack of subject matter jurisdiction under Fed. Rule Civ. P. 12(b)(1).

**II. DISCUSSION**

    **A. STANDARD OF REVIEW FOR RULE 12(B)(1)**

Where a defendant raises the issue of lack of subject matter jurisdiction under Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion to dismiss. DXL, Inc. v. Kentucky, 381 F.3d 511, 516 (6th Cir. 2004); Moir v. Greater Cleveland Regional Transit Auth., 895 F.2d 266, 269 (6th Cir. 1990).

Motions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks. United States v. Ritchie, 15 F.3d 592, 598 (6th Cir. 1994). A facial attack on subject matter jurisdiction goes to whether the plaintiff has properly alleged a basis for subject matter jurisdiction, and the trial court takes the allegations of the complaint as true. Ohio Nat'l Life Ins. Co. v. United States, 922 F.2d 320, 325 (6th Cir. 1990). A factual attack is a challenge to the factual existence of subject matter jurisdiction. No presumptive truthfulness applies to the factual allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. Ritchie, 15 F.3d at 598; Moir, 895 F.2d at 269. Here, defendants

3

are making a facial attack on plaintiffs' complaint.


**B.   STANDING**

Plaintiffs bringing an action under the APA must still make a sufficient showing of Constitutional standing in the district court. <u>Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.</u>, 454 U.S. 464, 487 n.24 (1982)("Neither the Administrative Procedure Act, nor any other congressional enactment, can lower the threshold requirements of standing under Art. III."). Standing is "'the threshold question in every federal case.'" <u>Coyne v. American Tobacco Co.</u>, 183 F.3d 488, 494 (6th Cir.1999) (quoting <u>Warth v. Seldin</u>, 422 U.S. 490, 498 (1975)). The plaintiff "bears the burden of demonstrating standing and must plead its components with specificity." <u>Coyne</u>, 183 F.3d at 494. "It is the responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers." <u>Warth</u>, 422 U.S. at 518.

The doctrine of standing under Article III of the U.S. Constitution requires a plaintiff to have "suffered some actual or threatened injury due to the alleged illegal conduct of the defendant; the injury must be 'fairly traceable' to the challenged action; and there must be a substantial likelihood that the relief requested will redress or prevent the plaintiff's injury." <u>Coyne</u>, 183 F.3d at 494. These factors are commonly known as proof of injury in fact, causation, and redressability. <u>See id</u>. Injury to one's reputation can be a sufficient injury for standing purposes. <u>Meese v. Keene</u>, 481 U.S. 465, 476, 480 n. 14

4

(1987)(holding that damage to a plaintiff's professional reputation was sufficient to confer standing).

A plaintiff seeking declaratory and injunctive relief must show "actual present harm" or a "significant possibility of future harm." Grendell v. Ohio Supreme Court, 252 F.3d 828, 832 (6th Cir. 2001) (quoting Nat'l Rifle Assoc. of Am. v. Magaw, 132 F.3d 272, 279 (6th Cir. 1997)). Simply being exposed to illegal conduct in the past does not, in itself, demonstrate a present case or controversy for purposes of injunctive relief unless such exposure is accompanied by continuing, present, adverse effects. City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1995).

The dispute of standing in this case involves whether plaintiffs' allegations in their complaint demonstrate an injury in fact and whether that injury is redressable by issuing an injunction or declaratory relief in this court. Defendants argue that plaintiffs cannot demonstrate standing for their claims of injunctive and declaratory relief because they cannot show actual present harm or a significant possibility of future harm stemming from their expired debarments.

### 1. Injury in Fact

While plaintiffs' allegations may not be detailed, they are reasonably definite to sustain standing. In their complaint, plaintiffs state that prior to their debarment in 2005, plaintiffs had over $27 million in annual revenue, primarily from government contracts and subcontracts. Complaint, ¶ 67. Plaintiffs' 2005 debarment was for shipment of nonconforming parts and a "history of unsatisfactory performance and of failure

to perform one or more government contracts." Complaint, Exhibit 2, p. 20. Plaintiffs' 2008 proposed debarment indicated plaintiffs'"lack of business integrity or business honesty"(Complaint, Exhibit 4, p.2) and the final debarment stated plaintiffs exhibited "seriously improper conduct [providing] a cause for debarment" (Complaint, Exhibit 16, p. 7). Plaintiffs allege that both the 2005 and 2008 debarments "are blemishes on plaintiffs' record that hamper their ability to compete for future contracts" and that the "bid process requires an evaluation of contractor responsibility, including whether the contractor has a satisfactory record of integrity and honesty." Complaint, ¶¶ 343, 340. Thus, the complaint states that plaintiffs engaged in a large amount of government work prior to debarment, that their reputations will be injured by the past debarments, and that this injury will result from a bid process that requires contracting officers to make an evaluation of contractor responsibility.

Plaintiffs' allegations are supported by the text of the FAR. Before a contracting officer can award a contract to a prospective contractor, that officer must determine whether that contractor is "responsible." 48 C.F.R. § 9.103(b). In order to determine whether a contractor is responsible, a contracting officer considers a number of things, including whether the prospective contractor has a satisfactory performance record and a satisfactory record of integrity and business ethics. 48 C.F.R. § 9.104-1(c) and (d). As to "satisfactory performance," the regulations state that "[f]ailure to meet the quality requirements of the contract is a significant factor to consider

6

in determining satisfactory performance." 48 C.F.R. § 9.104-3(b).

Given the reasons for plaintiffs' debarment, this court finds it is likely these debarments will be used in the future when making responsibility determinations. When a contracting officer is determining plaintiffs' history of satisfactory performance, he will likely consider that plaintiffs' 2005 debarment was for shipment of nonconforming parts, no doubt a failure to meet the quality requirements of the contracts. In fact, the stated reason for the 2005 debarment was plaintiffs' "history of unsatisfactory performance and of failure to perform one or more government contracts." Complaint, Exhibit 2, p. 20. Similarly, when determining plaintiffs' record of integrity and business ethics, a contracting officer would likely consider plaintiffs' proposed debarment indicating plaintiffs'"lack of business integrity or business honesty"(Complaint, Exhibit 4, p.2) as well as the stated reason for the final debarment that plaintiffs exhibited "seriously improper conduct [providing] a cause for debarment" (Complaint, Exhibit 16, p. 7).

Before making a determination of responsibility, the contracting officer must possess or obtain information "sufficient to be satisfied that a prospective contractor currently meets the [responsibility standards]." 48 C.F.R. § 9.105-1(a). In making that determination of responsibility, the contracting officer should consider relevant past performance information, including the Past Performance Information Retrieval System (PPIRS), the EPLS, records and experience data (including verifiable knowledge of personnel within the contracting office, audit offices, contract administration offices, and other

7

contracting offices), the prospective contractor, commercial sources of supplier information of a type offered to buyers in the private sector, preaward survey reports, and other sources such as publications, suppliers, subcontractors, financial institutions, government agencies and business and trade associations. 48 C.F.R. § 9.105-1(c). Finally, "[c]ontracting offices and cognizant contract administration offices that become aware of circumstances casting doubt on a contractor's ability to perform contracts successfully shall promptly exchange relevant information." 48 C.F.R. § 9.105(d). None of these regulations specifically note whether a contracting officer can or cannot consider evidence of past debarments when making a responsibility determination.

Defendants argue that because this list of sources to which a contracting officer can look when making a responsibility determination does not list past debarments, a record of a past debarment would not be used in making a responsibility determination.[1] But the list in no way prohibits contracting officers from considering past debarments. In fact, the regulations are so broad that this court believes evidence of a

---

[1] Defendants cite other regulations as well to demonstrate a contracting officer is not *directed* to look at past debarments or the EPLS archive. But none of these regulations prohibit contracting officers from considering past debarments. See 48 C.F.R. § 209.105-1(1)(stating "*one source* of information relating to contractor performance is the Past Performance Information Retrieval System (PPIRS)" (emphasis added)); Subpart 42.15, 48 C.F.R. § 42.1500 (specifying policies and establishing responsibilities for recording and maintaining contractor performance information); DLAD 9.105-1(91)-(92)(indicating various treatment codes assigned to contractors on the DLA's Defense Contractor Review List (DCRL)).

8

past debarment would likely be considered. 48 C.F.R. § 9.105-1(c) states the contracting officer can rely on "records and experience data, including verifiable knowledge of personnel within the contracting office, audit offices, contract administration offices, and other contracting offices. " On its face, "records and experience data" could easily be interpreted to mean records of past debarments. 48 C.F.R. § 9.105(d) specifically states that "[c]ontracting offices and cognizant contract administration offices that become aware of circumstances casting doubt on a contractor's ability to perform contracts successfully shall promptly exchange relevant information." This regulation seemingly encourages the sharing of all information relevant to a responsibility determination. The list of sources to which a contracting officer can look when making a responsibility determination includes "other sources such as . . . government agencies." 48 C.F.R. § 9.105-1(c). This regulation is extremely broad, referring to government agencies in general as a source of information when determining a contractor's responsibility. While there may be no government directive requiring a contracting officer to consider past debarment, a reasonable person reading these regulations could justifiably conclude that they should consider a past debarment decision when making a responsibility determination if that debarment is relevant.

Moreover, "responsibility decisions are largely a matter of judgment" and "contracting officers are generally given wide discretion to make this decision." John C. Grimberg Co. v. United States, 185 F.3d 1297, 1303 (Fed. Cir. 1999); See Bender

9

Shipbuilding & Repair Co. v. United States, 297 F.3d 1358, 1362
(Fed. Cir. 2002). The contracting officer is the "arbiter of
what, and how much, information [he] needs." John C. Grimberg
Co., 185 F.3d at 1303.  This court is aware of at least one case
where debarment proceedings were considered when a contracting
officer was making her determination of responsibility.  See OSG
Prod. Tankers LLC v. United States, 82 Fed. Cl. 570, 576 (Fed.
Cl. 2008) (where the contracting officer, in making her
responsibility determination, considered the contractor's parent
company's debarment proceedings, including a settlement that did
not result in final debarment).

    In addition to the general FAR regulations, the DLA's
supplement to the FAR, the Defense Logistics Acquisition
Directives ("DLAD") (available at
http://farsite.hill.af.mil/reghtml/regs/other/dlad/dlad1toc.htm)
*strongly recommends* that a contracting officer aware of a past
debarment request a preaward survey (PAS) to obtain more
information before awarding the contractor that bid.  DLAD
9.106-1(a)(90)(1). When such a survey is requested, the
contracting officer is to identify "integrity" as a factor about
which more information is needed and ask the PAS team to identify
the corrective actions undertaken to address the problems that
resulted in the contractor being listed.  DLAD 9.106-1(a)(91).
While defendants argue that application of this rule is
speculative because a number of things need to occur before a
preaward survey is requested and thus this rule cannot confer

standing on plaintiffs,[2] it at least suggests that at least one agency is *directed* to look at past debarments.

Defendants argue that the possibility of plaintiffs' debarment affecting their future right to contracts is too attenuated and hypothetical to confer standing and essentially amounts to an allegation that some contracting officer some day might look at the debarment in a responsibility determination and might decide not to grant plaintiff a contract on that basis. In Grendell, an attorney who had been sanctioned in the past by the Ohio Supreme Court under a rule dealing with sanctions for frivolous lawsuits sought declaratory and injunctive relief in the district court. 252 F.3d at 831. He argued he had standing because he had been previously sanctioned and was subject to the adverse effects of the rule because it "chilled" the exercise of his protected conduct. Id. at 832. The Sixth Circuit found that the threat of Grendell's future injury was highly conjectural, "resting on a string of actions the occurrence of which is merely speculative." Id. at 833. In order to demonstrate standing, Grendell would have had to demonstrate he was highly likely to bring a lawsuit before the Ohio Supreme Court again, such lawsuit would be allegedly frivolous exposing him to sanctions under the

---

[2]According to defendants, prior to application of the DLAD 9.106-1(a)(90)(1) against plaintiffs, the following would have to take place: (i) Lasmer submits an offer in a DLA procurement, (ii) Lasmer's offer is proposed for award, (iii) the information on hand or readily available to the contracting officer is insufficient to make a responsibility determination after Lasmer is proposed, and (iv) the contracting officer decides that actual performance of a preaward survey is in the best interests of the government. DLAD 9.106-1(a)(91); 48 C.F.R. § 9.105-1(b)(1); 48 C.F.R. § 9.106-1(a).

11

rule, and that the Ohio Supreme Court in its discretion would impose such sanctions in violation of due process. Because this chain of events was too attenuated to establish injury in fact, the plaintiff lacked standing.

Unlike the plaintiff in <u>Grendell</u>, plaintiffs' situation here is not so attenuated. Plaintiffs made their living as a government contractor, with $27 million in annual revenue, primarily from government contracts and subcontracts, prior to the 2005 debarment. Complaint, ¶ 67. Given plaintiffs' successful history of government contracting, it is highly likely that plaintiffs will continue to submit contracts in the future and will in fact be the low bidder on at least some government contracts. Plaintiffs have on their record two debarment determinations which are relevant to a contracting officer's responsibility determination. Given the likelihood of plaintiffs contracting in the future and given that the debarment is directly relevant to determining plaintiffs' responsibility to be awarded those contracts, this court does not find plaintiffs' allegations of harm to be merely speculative or too attenuated to demonstrate the requisite injury.

Defendants cites <u>Inacom Corp. v. Massachusetts</u>, 2 F. Supp. 2d 150 (D. Mass. 1998), as holding that expired debarments are not injuries in fact that create standing to seek injunctive or declaratory relief, but <u>Inacom</u> is distinguishable. In <u>Inacom</u>, a state trial court found a subsidiary of Inacom had failed to make workers' compensation payments to an employee. The subsidiary appealed the decision. While that appeal was pending, Inacom was notified it was debarred by the state of Massachusetts from

bidding on state contracts based on the subsidiaries' failure to pay the workers' compensation benefits. Inacom filed an action in the district court of Massachusetts seeking declaratory relief that the debarment was unconstitutional, an injunction against enforcement of the statute, and a claim for monetary relief. The district court held that because of the pending state case in the state court of appeals, the district court had no jurisdiction. The court stated, hypothetically, that even if the case was resolved in Inacom's favor at the state court of appeals, it did "not necessarily follow that Inacom could then show a live case or controversy invoking the jurisdiction of [the district] court." Id. at 153. If the grounds for Inacom's debarment no longer existed, the court found it unlikely that the state would then attempt to keep the debarment order in effect. The court held Inacom would have no standing to seek injunctive relief "unless a sufficient likelihood exists that the party will be again wronged in a similar manner." Id. The court never analyzed whether it was likely that Inacom would again be harmed in a similar manner and thus, was not faced with the question before this court today. Here, this court finds plaintiffs will likely be harmed in a similar manner, that is, their damaged reputation will be taken into consideration in making responsibility determinations when awarding government contracts.

Caiola v. Carrol, 851 F.2d 395 (D.C. Cir. 1988) is illustrative. Although involving the doctrine of mootness, it is relevant to determining whether or not potential future harm by an expired debarment is a sufficient injury. In Caiola, the D.C. Circuit stated that although at the time of filing the opinion

the debarment had expired, "the prospect of a lingering stigma or other adverse impact appears to keep this case vital." Id. at 401. The D.C. Circuit cited to regulations that have since been removed from the FAR, 48 C.F.R. § 552.209-7(a), (c) and 552.209(72), which required the offeror of solicitations for supplies, services and leases of real property to certify whether any of its officers had ever been debarred or suspended from the award of a public contract. Although this regulation is no longer part of the FAR, it does not detract from the fact that the court agreed that the "the prospect of a lingering stigma or other adverse impact" would be sufficient injury to bring a cause of action if a plaintiff could demonstrate such stigma or adverse impact exists. Here, plaintiffs have done so and have alleged an injury sufficient to confer standing on this court to grant injunctive and declaratory relief.

Defendants argue that although plaintiffs still appear on the EPLS archive, they do not appear on the EPLS and plaintiffs have not demonstrated that any contracting officer will actually search the EPLS archive when making a responsibility determination. Defendants argue the regulations are reasonably interpreted only to refer contracting officers to listed contractors, not those listed on the archives. In fact, defendants point this court to the website for the EPLS that states under the heading of frequently asked questions:

> "The archive is for historical reference only. It should not be used to deny an eligible individual or firm from participating in federal contracts or federally approved subcontracts and other types of federal financial and nonfinancial assistance and benefit type programs."

14

*See* Excluded Parties List System, Frequently Asked Questions, *available at* https://www.epls.gov/epls/jsp/FAQ.jsp#22. While this website does state the archive cannot be use to deny an eligible individual from participating in federal contracts, it does not say it cannot be a consideration when making a responsibility determination. Moreover, contracting officers are given broad discretion in making procurement decisions and are not limited to only looking at the EPLS to find out if a contractor has ever been debarred. As noted above, they can look to many sources.

Given that the regulations specifically require contracting officers to consider plaintiffs' record of past performance and business integrity when awarding contracts, given the wide variety of sources to which a contracting officer may look, and given the large amount of discretion contracting officers are given when making their responsibility determinations, plaintiffs have sufficiently alleged that their ability to contract with the government in the future will likely be impeded based on their past debarment. Such an injury is sufficient to confer standing.

### 2. Causation and Redressability

There is no doubt that if plaintiffs are suffering a reputational injury from being debarred in the past, such injury is fairly traceable to the challenged debarments. Thus, the causation element is also satisfied.

The defendants also argue that even if this court were to prevent the agency from reporting the debarment, the underlying record of plaintiffs' behavior, that they breached contracts or

15

continued to contract with the government while debarred, would still exist in the records of those contracting agencies. Thus, an injunction or declaration by this court would not redress plaintiffs' grievance because it would not prevent other contracting agencies from reporting the information that was the basis of plaintiffs' debarment. But whether or not there are other sources of information that agencies may use to disqualify plaintiffs is not before this court. Based on the regulations, this court determines injury from the debarments is a significant possibility[3] and that an injunction and declaration by this court would redress plaintiffs' injuries because it would prevent the DLA from reporting plaintiffs' debarment.

C. **SUR-REPLY**

Plaintiffs have filed a sur-reply with this court (Doc. 20), purporting to address a "new argument" raised in defendants Reply (Doc. 17). Consideration of plaintiffs' sur-reply is not warranted as defendants' reply memorandum did not raise any new issues which had not been previously raised and plaintiffs' sur-reply brings up arguments unrelated to the issue of standing. Therefore, plaintiffs' request to file a sur-reply is DENIED.

D. **MOTION TO FILE REPLY TO DEFENDANTS' E-MAIL SUBMISSION**

A hearing on this motion was held on July 24, 2009. The court requested that defendants submit to it via e-mail certain

---

[3]During oral argument on this motion, plaintiffs argued there was no such underlying record because they had never been formally found in violation of any contract. (Transcript, 23-24). Thus, the debarment itself is what is damaging their reputation.

citations referred to during oral argument. Plaintiffs, by unopposed motion, filed a motion with this court requesting an opportunity to respond to these submissions. Plaintiffs' motion to file such reply (Doc. 30) is GRANTED and the court has considered plaintiffs' reply in so far as it is relevant to this opinion.

### III.     CONCLUSION

Because plaintiffs have met their burden of alleging the components of standing necessary to seek declaratory and injunctive relief, defendants' motion to dismiss is **DENIED**. (Doc. 9). Plaintiffs' request to file a sur-reply is **DENIED**. (Doc. 20). Plaintiffs' request to reply to defendants' e-mail submission (Doc. 30) is **GRANTED**. The court will set a deadline for the plaintiffs' response to defendants' motion for summary judgment (Doc. 9) after a decision is rendered on plaintiffs' request for discovery outside the administrative record.

**IT IS SO ORDERED.**

                             s/ James L. Graham
                             JAMES L. GRAHAM
                             United States District Judge

**Date**: August 12, 2009