IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Charles Hickey Jr., et al.,     :
                                :   Case No: 2:08-CV-0824
        Plaintiffs,             :
                                :   Judge Graham
        vs.                     :
                                :   Magistrate Judge King
Mary Susan Chadick, et al.,     :
                                :
        Defendants.             :

**ORDER**

Plaintiffs, Lasmer Industries and various officers or managers of the Company, (collectively "plaintiffs") bring this action pursuant to the Administrative Procedures Act, 5 U.S.C. § 701, et seq. ("APA"), against Defendants Defense Logistics Agency ("DLA"), Lieutenant General Robert T. Dail, in his official capacity as Director of DLA, and M. Susan Chadick, in her official capacity for the DLA as Special Assistant for Contracting Integrity (collectively, "defendants"), to challenge two expired debarments issued by the DLA.

I.    **BACKGROUND**

Debarment is an action taken against a contractor to exclude it from government contracting for a specified period. Contractors debarred, suspended, or proposed for debarment are excluded from receiving government contracts.  48 C.F.R. § 9.405(a).

Plaintiffs are in the business of manufacturing replacement parts for use in High Mobility Multi-Purpose Wheeled Vehicles

1

(hereinafter "HMMWV"). The DLA is an agency of the Department of Defense. Defendant Mary Susan Chadick is the Special Assistant for Contracting Integrity (hereinafter "the debarring official") employed by the DLA. In 2005, the DLA debarred plaintiffs from government contracting because the debarring official found that plaintiffs had shipped a number of nonconforming parts on various government contracts. In 2008, plaintiffs' debarment was extended because plaintiffs continued to contract with the government, despite their status as debarred contractors.

Plaintiffs bring this action under the APA to challenge the 2005 and 2008 debarments. Plaintiffs have requested that this court allow plaintiffs to supplement the 2005 administrative record with various documents and allow plaintiffs to pursue discovery outside the administrative record. For the reasons that follow, this court DENIES plaintiffs' requests.

## II. Discussion

Debarment decisions are reviewed under the Administrative Procedures Act (APA), 5 U.S.C. § 701, et seq. See, e.g., Shane Meat Co., Inc. v. U.S. Dept. of Defense, 800 F.2d 334, 336 (3d Cir. 1986). In a case brought under the APA, the district court reviews the administrative record to determine whether the debarment decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Id. quoting 5 U.S.C. § 706(2)(A). "The arbitrary or capricious standard is the least demanding review of an administrative action. If there is any evidence to support the agency's decision, the agency's determination is not arbitrary or capricious." Kroger Co. v. Reg'l

<u>Airport Auth. Of Louisville and Jefferson</u>, 286 F.3d 382, 389 (6th Cir. 2002)(internal citations omitted). The APA requires a district court to review "the whole record or those parts of it cited by a party." 5 U.S.C. § 706.

Plaintiffs move both to supplement the administrative record with documents they claim were "before the agency" at the time of the 2005 debarment decision but improperly excluded from the administrative record, and to supplement the record with whatever relevant materials plaintiffs uncover after engaging in discovery.

## A.    Records "Before the Agency"

The administrative record includes all materials "compiled" by the agency that were "before the agency at the time the decision was made." <u>Sierra Club v. Slater</u>, 120 F.3d 623, 638 (6th Cir. 1997)(quoting <u>James Madison Ltd by Hecht v. Ludwig</u>, 82 F.3d 1085, 1095 (D.C. Cir. 1996)). Review of the "whole record" includes all "documents and materials directly or indirectly considered by the agency." <u>BAR MK Ranches v. Yuetter</u>, 994 F.2d 735, 739 (10th Cir. 1993). Generally a court's review is confined to the administrative record, not a new record made initially in the reviewing court. <u>Kroger Co.</u>, 286 F.3d at 387 (citing <u>Camp v. Pitts</u>, 411 U.S. 138, 142 (1973)). The task of the reviewing court is to apply the standard of review to the agency "based on the record the agency presents to the reviewing court." <u>Florida Power & Light Co. v. Lorion</u>, 470 U.S. 729, 743-744 (1985). The agency is given a "strong presumption of regularity" in its submission and certification of the administrative records. <u>Sara Lee Corp. v. Am. Bakers Ass'n.</u>, 252 F.R.D. 31, 34 (D.D.C. 2008). "The court assumes the agency

properly designated the Administrative Record absent clear evidence to the contrary." <u>BAR MK Ranches</u>, 994 F.2d at 740.

In order to overcome the presumption that the administrative record was properly designated, plaintiffs must do more than simply assert the allegedly omitted documents are relevant, were before the agency at the time of the decision, and were inadequately considered. <u>Pac. Shores Subdivision Cal. Water Dist. v. United States Army Corps of Eng'rs</u>, 448 F. Supp. 2d 1, 6 (D.D.C. 2006); <u>Sara Lee</u>, 252 F.R.D. at 34 (plaintiff cannot merely assert that other documents were relevant but not adequately considered). "[P]laintiff 'must identify reasonable non-speculative grounds for its belief that the documents were considered by the agency and not included in the record.'" <u>Sara Lee</u>, 252 F.R.D. at 34 (quoting <u>Pac. Shores</u>, 448 F. Supp. 2d at 6). It is not enough that the documents were known by the DLA generally, plaintiff must show the documents were known by the DLA decision maker in particular. <u>See</u> <u>Sara Lee</u>, 252 F.R.D. at 34; <u>Pac. Shores</u>, 448 F. Supp. 2d at 6.

Here, plaintiffs have not made a sufficient showing that the record was not properly designated to overcome the presumption of regularity to which the DLA is entitled. Plaintiffs allege that the documents they wish this court to consider were "before the agency." The nature of these documents are discussed below. But Plaintiffs admit they do not know whether the debarring official had any knowledge of any of the materials the plaintiffs wish to submit, nor have plaintiffs provided this court with any reason to believe that such materials were directly or indirectly before the debarring official at the time she made her decision. Plaintiffs cannot demonstrate these records were "before the agency" at the time the debarring official rendered her decision. Therefore,

4

plaintiffs' request to supplement the administrative record with documents they claim were "before the agency" is denied.

**B.   Expansion of the Administrative Record Through Discovery**

Because plaintiffs have not made a showing that any of the documents they wish to add to the administrative record were "before the agency," they must instead demonstrate that this case is one appropriate for supplementation of the administrative record through discovery. The purpose of limiting review of the record before the agency is to guard against courts using new evidence to convert the arbitrary and capricious standard into de novo review. Axiom Res. Mgt, Inc. v. United States, 564 F.3d 1374, 1380 (Fed. Cir. 2009). "When exceptional circumstances arise, however, the reviewing court may exercise its discretion to expand or supplement the administrative record." See Charter Twp.Van Buren v. Adamkus, No. 98-1463, 1999 U.S. App. LEXIS 21037 at * 14 (6th Cir. Aug. 30, 1999). The Sixth Circuit has identified only three circumstances that warrant supplementation of the administrative record: 1) when an "agency deliberately or negligently excludes certain documents," 2) "when the court needs certain 'background information' in order to determine whether the agency considered all of the relevant factors," and 3) when there is a "'strong showing' of bad faith." Slater, 120 F.3d at 638 (6th Cir. 1997)(quoting James Madison Ltd, 82 F.3d at 1095).

Plaintiffs urge this court to rely on Esch v. Yeutter, 876 F.2d 976, 991 (D.C. Cir. 1989), where the D.C. Circuit recognized eight circumstances in which review of materials outside the administrative record might be appropriate. Recently, the Federal

Circuit criticized Esch, noting it was heavily in tension with existing precedent and that its exceptions were so broadly-worded that they risked being incompatible with the limited nature of arbitrary and capricious review. See Axiom, 564 F.3d at 1380-1381. The Sixth Circuit has never cited Esch. Thus, this court declines to apply it here and will only apply the factors recognized by the Sixth Circuit in Slater.

### 1) Plaintiffs Have Failed to Demonstrate The DLA Deliberately Or Negligently Excluded Documents

While plaintiffs argue that defendants have deliberately and negligently excluded certain documents from the administrative record, they offer no factual support on which this court can base such a conclusion. Plaintiffs point this court to documents that they retrieved through a Freedom of Information Act ("FOIA") request, the contents of which are discussed later in this opinion. Plaintiffs have given this court no reason to believe that these documents were before the debarring official at the time she made her decision or that they were somehow deliberately or negligently excluded from the record. Plaintiffs cite no evidence for their assertion that the debarring official was aware of any of these documents. Doc. 15, p. 6, 10. Thus, plaintiffs' allegations that these documents were deliberately or negligently excluded amount to no more than mere suspicion and innuendo and are insufficient to allow this court to supplement the administrative record. See Beta Analytics Int'l, Inc. v. United States, 61 Fed. Cl. 223, 226 (Fed. Cl. 2004)(holding innuendo or suspicion is not enough to demonstrate bad faith and thus justify discovery).

**2) Plaintiffs Have Not Demonstrated This Court Needs Background Information To Determine If The DLA Considered All Relevant Factors**

Plaintiffs argue that this court needs additional background information because the DLA failed to consider all relevant factors in its decision. Discovery will be permitted where there is evidence that the agency has failed to explain administrative action so as to frustrate judicial review. <u>Pitts</u>, 411 U.S. at 142-143. The D.C. Circuit has explained this exception in some detail.

> When the record is inadequate, a court may obtain from the agency, either through affidavits or testimony, such additional explanations of the reasons for the agency decision as may prove necessary. The new materials should be merely explanatory of the original record and should contain no new rationalizations. . . . Consideration of the evidence to determine the correctness or wisdom of the agency's decision is not permitted, even when the court has also examined the administrative record. . . . There is no occasion for a judicial probe beyond the confines of a record which affords enough explanation to indicate whether the agency considered all relevant factors. If anything, a judicial venture outside the record can only serve either as background information, or to determine the presence of the requisite fullness of the reasons given; and it can never . . . examine the propriety of the decision itself.

<u>Environmental Defense Fund, Inc. v. Costle</u>, 657 F.2d 275, 285- 286 (D.C. Cir. 1981)(internal quotations and citations omitted).

Plaintiffs were debarred for shipment of nonconforming parts. Plaintiff had opportunity to present argument in opposition during the debarment. The 2005 administrative record produced in this case contains over 1200 pages of documents. The final debarment contains

a 22 page memo with detailed findings supporting the DLA's decision. Without deciding whether the decision was arbitrary and capricious, the explanation appears adequate on its face. See James Madison Ltd, 82 F.3d at 1095 (noting that where the record contains detailed contemporaneous reports from the examiner-in-charge and members of her team explaining how and why they reached their conclusions, the court will not find it necessary to supplement the record with background information). Therefore, plaintiffs have not met their burden to show this court needs additional background information to determine if the agency considered all relevant factors.

### 3) Plaintiffs Have Not Made A Strong Showing of Bad Faith

In order to rely on bad faith to seek discovery or supplementation of the administrative record, plaintiffs must make a "strong showing." Slater, 120 F.3d at 638. "To overcome the presumption of validity of agency action . . . plaintiff must show specific facts indicating the challenged action was reached because of improper motives." Adamkus, 1999 US APP LEXIS 21037 at *16. "Given the presumption of regularity and good faith, to put facts relating to bad faith in play a plaintiff must first make a threshold showing of either a motivation for the Government employee in question to have acted in bad faith or conduct that is hard to explain absent bad faith." Beta Analytics Int'l, Inc., 61 Fed. Cl. at 226. Innuendo or suspicion is not enough to demonstrate a strong showing. Id. At issue is the bad faith of the agency. See Adamkus, 1999 U.S. App. LEXIS 21037 at *14.

Plaintiffs' allegations of bad faith center around three main circumstances 1) improper influence or collusion between one of plaintiffs' alleged competitors, AM General, and the DLA 2) improper reliance on overly stringent contract specifications, and 3) wrongdoing by the debarring official.

### a) *Allegations Surrounding AM General*

Many of plaintiffs' allegations of bad faith center around plaintiffs' belief that the DLA was acting in collusion with one of plaintiffs' alleged competitors, AM General, in order to have plaintiffs debarred.[1] AM General is the Original Equipment Manufacturer ("OEM") of the HMMWV, meaning it is the original supplier and manufacturer of HMMWV to the military. The U.S. Army Tank and Automotive Command (TACOM) administers the HMMWV program for the military and is the Engineering Support Activity ("ESA") for the HMMWV. As the OEM and the ESA for the HMMWV, AM General and TACOM work together to design and manufacture these vehicles. DLA manages repair parts for the Army, Air Force, Navy and Marine Corps, including repair parts for the HMMWV.

Plaintiffs allege that AM General's contract to provide HMMWVs expired in 2005 and thus, AM General had an incentive to deflect blame from itself onto Lasmer for problems with the HMMWV. But plaintiffs provide no facts connecting AM General's motives to any

---

[1]Plaintiffs and defendants dispute whether AM General was a competitor of Lasmer. For purposes of this motion, this dispute need not be resolved because even assuming AM General was plaintiffs' competitor, plaintiffs have still made an insufficient showing of bad faith on the part of the agency.

ulterior motives on the part of the debarring official or the DLA. As noted above, at issue is the bad faith of the agency, not plaintiffs' competitor.

Plaintiff argues that prior to Lasmer's debarment in 2005, AM General and Lasmer both submitted bids for HMMWV doors. By the time the bid was awarded, plaintiffs were debarred from federal contracting and ineligible to receive the contract. Plaintiffs surmise that AM General delayed drawing modifications so as to intentionally delay the award until plaintiffs were ineligible to receive it. Plaintiffs have submitted an affidavit from Larry Howard, General Manager of Lasmer, one of the plaintiffs in this case, indicating his belief the delay in the drawings was "very odd" because the doors were needed immediately, yet the drawing modifications were small in detail. Doc. 21, Aff. Larry Howard, ¶ 3). This "evidence" amounts to no more than suspicion and innuendo, insufficient to support a strong showing of bad faith on the part of the DLA.

Plaintiffs were debarred for shipment of nonconforming parts on numerous government contracts. Some of these nonconforming parts were idler arms, parts used on the HMWVV suspension system. Plaintiffs have obtained through a FOIA request a letter from C.M. Lilli, Former Commander of the Defense Supply Center Columbus (DSCC), that states AM General's idler arms failed certain specifications and AM General was given a waiver for such failure. Plaintiffs argue that the fact that plaintiffs were debarred in part for failure of their idler arms yet AM General was not debarred for failure of its idler arms, but instead was granted a waiver of the specification requirement, demonstrates bad faith on

the part of the DLA. The waiver, however, was given by TACOM, not the DLA, and plaintiffs fail to demonstrate that the debarring official was aware that this waiver was given. Doc. 21, Aff. Of Larry Howard, ¶ 9. Thus, plaintiffs have not demonstrated bad faith on the part of the DLA because there is no evidence the DLA was aware of the waiver given by TACOM.

Plaintiffs allege that the DLA acted in bad faith by relying on a test report commissioned by AM General indicating plaintiffs' seat belts were defective. Because the test was commissioned by AM General, plaintiffs are suspicious that it is fraudulent. Plaintiffs made this argument throughout their debarment proceedings. Plaintiffs have provided this court with no evidence that the test, which was performed by an independent testing facility, should be subject to suspicion simply because it was originally prepared for AM General and not the government. While its conceivable that this court could ultimately decide the debarring official should not have relied on the report and such reliance was arbitrary and capricious, the debarring official's reliance on the report is not indicative of bad faith.

Plaintiffs received additional documents through a FOIA request that plaintiffs suggest demonstrate bad faith on the part of the debarring official. The documents suggest during the same time frame as plaintiffs' debarment proceedings, AM General, the DLA, and TACOM met to discuss suspension parts for the HMMWV. The documents also reflect that suspension parts on the HMMWV were failing "due to high OPTEMP, harsh environmental conditions, and extremely heavy payloads. These factors have caused and will continue to cause premature failure of suspension parts." Doc. 15,

Ex. D. Because of this failure, the suspension parts were being replaced with some new parts from AM General. Plaintiffs argue these documents reflect "secret" meetings between the government and AM General and demonstrate motive on the part of AM General to have plaintiffs debarred. Doc. 15, p. 10. They also argue that these documents demonstrate that the suspension parts, which formed part of the basis of their debarment, were failing for reasons other than defects attributed to plaintiffs. Finally, they argue they should not have been debarred for shipment of nonconforming suspension parts because the suspension parts had become obsolete and were being replaced.

These FOIA documents do not reflect bad faith on the part of the debarring official and are irrelevant to plaintiffs' debarment. Given AM General's close relationship with the government regarding the manufacture of HMWVV's, it is not suspicious that they would be involved in meetings about the HMWVVs suspension system. The fact that suspension parts became obsolete or were failing for reasons other than plaintiffs' alleged defects has no bearing on whether Lasmer's parts conformed to the specifications Lasmer was required to meet under government contracts. Finally, the fact that AM General was supplying the replacement parts does support the conclusion that AM General was acting in collusion with the DLA to have plaintiffs debarred. Plaintiffs cite no evidence for their conclusion that the debarring official had any of this information. See Doc. 15, p. 6.

### b) **_Allegations Surrounding Plaintiffs' Contract Deficiencies_**

Plaintiffs also allege bad faith on the part of the DLA because a contracting officer never found Lasmer in default on a contract. Only the DLA, and not the agencies with which plaintiff had contracted, made a finding that plaintiffs' contract performance was unsatisfactory. The DLA debarred plaintiffs from government contracting for unsatisfactory performance on one or more government contracts pursuant to 48 C.F.R. § 9.406-2(b)(1)(i)(B). The debarment regulations do not require a contracting officer to first make a finding that plaintiff breached a contract before a debarring official can find plaintiffs' performance unsatisfactory. The debarring official's independent judgment based on the evidence of plaintiffs' unsatisfactory performance does not demonstrate she acted in bad faith.

Plaintiffs again seek to rely on the letter from C.M. Lilli to demonstrate bad faith by the DLA because they argue the letter demonstrates the specifications with which they were required to comply were unrealistic. The letter indicates there were problems with the material specification requirements for both idler arms and ball joints as early as 2004. Plaintiffs argue that because there were problems with specifications for those parts, the DLA acted in bad faith in debarring plaintiff for failure to comply with those specifications. This letter is dated January 11, 2006, after debarment proceedings concluded, so it clearly does not demonstrate the debarring official was aware of the problems with the specifications or chose to ignore them in bad faith.

Finally, plaintiffs argue that the fact that no government agency objected to the nonconforming ball joint kits at the time they received them indicates bad faith. There is no reason to believe that acceptance of the kits by the individual agency without objection to defective parts indicates bad faith on the part of the DLA or debarring official. Again, plaintiff may argue this indicates the debarring official's decision was arbitrary and capricious, but it certainly does not justify discovery based on bad faith.

### c) *Allegations Against the Debarment Official*

Plaintiffs argue that the debarring official acted in bad faith because plaintiffs never received a hearing on allegedly disputed material facts. Under the FAR, if it is found that the contractor's submissions raise a genuine dispute over material facts, the contractor is afforded an opportunity to appear with counsel, submit evidence, present witnesses, and confront any person the agency presents. 48 C.F.R. 9.406-3 (b)(2)(i). Plaintiffs argue that because the debarring official did not agree with plaintiffs that there were materially disputed facts, she acted in bad faith. Whether or not the plaintiffs were entitled to a hearing on disputed facts is a matter this court will consider when it reviews the debarment decision. Absent other evidence, simply alleging plaintiffs were entitled to a hearing on disputed facts does not demonstrate bad faith on the part of the debarring official.

Plaintiffs argue that the debarring official engaged in ex parte communications because she acted as both prosecutor and debarring official at the hearing in violation of the APA. See 5 U.S.C. §§ 554 (d), 557(d). Neither party has briefed the issue of whether the ex parte provisions of the APA apply to debarment proceedings. But regardless of whether or not they apply, plaintiffs' submissions to this court are insufficient to demonstrate an ex parte communication by the debarring official. To support their allegation of ex parte communications, plaintiffs point to page 38 of the administrative record. Page 38 is an e-mail to Mr. Lussier, counsel for the debarring official, from the DSCC quality assurance specialist reflecting inspection records for ball joints. According to the Affidavit of Larry Howard, the DSCC cited the wrong standard for ball joints in this e-mail and plaintiffs never had the opportunity to respond. Doc. 21, Aff. Larry Howard, ¶ 13. Plaintiffs simply state, with no supporting documentation, that the debarring official "tasked her attorney, Mr. Lussier, with conducting a factual investigation, despite an apparent de facto determination that there was no genuine issue of material fact. In doing so, Mr. Lussier engaged in many ex parte communications, the content of which have not been provided to Plaintiffs and are not fully a part of the record. Mr. Lussier answered only to the debarment official. Plaintiffs also do not know what he told to the debarment official that was then relied upon by the official in rendering her decision." Doc. 21, p. 16.

The debarring official is not listed as a recipient in the e-mail nor has plaintiff pointed this court to evidence that such information was communicated to the debarring official. Nor have

plaintiffs educated this court on the relationship of Mr. Lussier to the debarring official or his official role in the process of debarment. This court does not know whether Mr. Lussier acts as an advocate for the debarring official or in a prosecutorial role for the DLA. Finally, this document is already included in the administrative record. If plaintiffs wish to argue that they were unlawfully debarred based on this alleged ex parte communication, they have the opportunity to do so when this court reviews the debarment decision. Because plaintiffs have not supported their contention that this e-mail constitutes an ex parte communications, plaintiffs cannot be granted discovery outside the administrative record on this ground.


### 4)    New Evidence Previously Unavailable

As noted above, the Sixth Circuit has only recognized three exceptions allowing supplementation of the administrative record. Moreover, the Supreme Court has made clear that review should be of the administrative record, "not some new record made initially in the reviewing court." Pitts, 411 U.S. at 142. Despite this, plaintiffs insist based on cases from outside this Circuit that they are also entitled to submit new evidence "previously unavailable" in support of their claims under the APA. Regardless of whether or not plaintiffs' have this right in this Circuit, plaintiffs have failed to demonstrate the new evidence is either relevant to their claims or was previously unavailable. See Murakami v. United States, 46 Fed. Cl. 731, 736 (Fed. Cl. 2000).

Therefore this court declines to allow supplementation of the administrative record with such evidence.

First, plaintiffs seek to submit new test reports commissioned by plaintiffs in the course of this litigation that plaintiffs argue demonstrate the seat belts were not defective. This evidence was not previously unavailable, however, because plaintiffs had adequate opportunity to get this test done during the debarment proceedings. Id. (noting the new evidence exception does not apply where the evidence in question was accessible to the plaintiff prior to the agency action); See also American Wildlands v. Kempthorne, 530 F.3d 991, 1002 (D.C. Cir. 2008) (denying appellants' motion to supplement the record with two letters from scientist written after the agency issued its finding that merely disagreed with the agency's conclusions). Plaintiffs' argument that such testing was not done because they were waiting for the government to do the testing is insufficient. If plaintiffs wanted to test the seat belts during the proceedings, they could have. Moreover, plaintiffs could have submitted additional evidence after the debarment proceedings through a request for a reduction of the period of debarment, as outlined in the FAR. 48 C.F.R. § 9.406-4(c)(1) ("The debarring official may reduce the period or extent of debarment, upon the contractor's request, supported by documentation, for reasons such as – (1) Newly discovered material evidence").

Plaintiffs also argue that this court should supplement the record with records from the Armed Services Board of Contract Appeals (ASBCA). In 2008 the DLA requested reimbursement of money paid for the alleged non-conforming products that were the

subject of plaintiffs' debarment. Plaintiff appealed to the
ASBCA.  Later the DLA moved to dismiss its case, which plaintiffs
argue amounts to an admission that there were no provable
deficiencies by plaintiffs for shipment of nonconforming parts.
But the DLA's dismissal of its case could have been for one of
many reasons, including the reason stated its motion to dismiss,
that they believed securing judgment from Lasmer to be unlikely
given the amount of time they waited to bring the action. Doc.
23, Exhibit F, p. 3 of Government's Motion to Dismiss. These
documents are not relevant to plaintiff's claim that the decision
of the debarring official was arbitrary and capricious.

Lasmer also seeks to supplement the record with documents
related to its pre-approval status.  In 2001, Lasmer was pre-
approved to provide certain parts to the government. In 2008,
after submitting a request for solicitation, Lasmer was notified
it was not listed as an approved source because they had been
debarred. Lasmer filed a protest of the soliciation with the
Government Accountability Office (GAO). The DSCC thereafter
cancelled the solicitation. Due to the cancellation, DSCC counsel
requested the dismissal of the protest on the grounds that the
solicitation was cancelled. The GAO dismissed the protest.
Plaintiffs allege that such documents demonstrate that the "DLA
and DSCC have gone to great lengths to shield their actions from
the important oversight function that Congress created for the
GAO in the Competition in Contracting Act (CICA)." Doc. 23, p.9.
Plaintiffs' proceedings before the GAO regarding Lasmer's protest
of a particular solicitation are not relevant to whether
plaintiffs' debarment was arbitrary and capricious.

Plaintiffs argue that the letter from C.M. Lilli, discussed above, received through a FOIA request, constitutes "new evidence" that was previously unavailable. Lasmer argues that this letter indicates that there were defects in the contract specifications for both ball joints and idler arms, part of the HMMWV suspension system.  The letter simply states that "there were problems with the material requirements in the A-1 Idler Arm Specification" and that "the original A-1 Ball joint specification proved to be inadequate and resulted in numerous product quality deficiency reports." Doc. 21, Exhibit F. Due to these specification deficiencies, the letter indicates the specifications were revised.

The debarring official's debarment decision indicates that Lasmer's idler arms were nonconforming in at least three different ways. They failed to meet deflection requirements, the bracket failed the composition requirements for carbon and manganese, and the bracket failed the minimum hardness requirement. The debarring official's debarment decision indicates Lasmer's ball joint parts kits were nonconforming in at least three different ways. The housing contained numerous cracks around the base of the ball joint. The stud failed the material analysis; carbon and manganese were out of tolerance. The stud also failed the hardness testing.  The fact that the letter from C.M. Lilli indicates that the specifications for these parts was revised does not indicate that the reason for the revision was the same reason that Lasmer's parts were found to be nonconforming. Thus, this letter is insufficient to constitute "new evidence" previously unavailable.  The fact that the parts

became obsolete due to the revision is not relevant to whether or not plaintiff initially shipped nonconforming parts.

Similarly, this letters' discussion of the waiver given to AM General regarding their idler arms likewise does not constitute "new evidence." The letter indicates that there were problems with AM General's "performance requirements" of the A-1 idler arm specification and that "TACOM then approved an AMG waiver request for this requirement . . ." Doc. 21, Ex. F. But as noted, Lasmer's idler arms were nonconforming in at least three different ways. Simply granting AM General a waiver with respect to "performance requirements" does not demonstrate that AM General's idler arm deficiencies were the same as or as serious as plaintiffs' idler arm deficiencies. Thus, plaintiffs have not shown the waiver given to AM General is relevant to their claim so as to constitute new evidence.

As noted above, plaintiffs received documents through a FOIA request suggesting that during the same time frame as plaintiffs' debarment proceedings, AM General, the DLA, and TACOM met to discuss suspension parts for the HMMWV; the HMMWV suspension system was failing for a variety of reasons; and AM General would be replacing some of the parts of the suspension system with new parts. For the reasons discussed above, these documents are irrelevant to this court's review of the debarment decision.


**III. <u>CONCLUSION</u>**

For the foregoing reasons, plaintiffs' request for discovery is DENIED. Plaintiffs' motion to supplement the record is also

DENIED. Doc. 23. Plaintiffs' requested 10 days following this court's ruling to file their opposition to the motion for summary judgment. Doc. 13, p.3. Plaintiffs' request is granted and plaintiffs have 10 days to file their opposition to the defendants' motion for summary judgment. Doc. 9. Defendants' reply to that opposition shall be in accordance with the procedures set forth in Local Rule 7.2.

**It is so ORDERED.**

s/ James L. Graham
JAMES L. GRAHAM
United States District Judge

**DATE**: September 18, 2009